UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ZULMY REVOLORIO RAMIREZ,
Petitioner,
v.
JOSHUA JOHNSON,
Respondent.

Case No. 5:26-cv-03691-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Zulmy Revolorio Ramirez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 18.) The Petition is granted and Respondents are directed to immediately release Petitioner from custody.

## II. PROCEDURAL HISTORY

On July 1, 2026, Petitioner filed a pro se Petition (Dkt. 1), a supporting memorandum of law (Dkt. 3 at 1-9), and a declaration signed under penalty of

perjury (Dkt. 3 at 10-11).[1] The Petition raised the following claims:

Ground 1: Petitioner "has been detained for thirty days without the bond hearing to which she is entitled under 8 U.S.C. § 1226(a) and the Fifth Amendment's Due Process Clause." (Pet. at 2.) "The Ninth Circuit has squarely held that a noncitizen detained under § 1226(a) is entitled to a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that she is a danger to the community or a flight risk." (Pet. at 3 (citing Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011)).

Ground 2: "[B]ecause her [Board of Immigration Appeals or "BIA"] appeal automatically stays removal" under 8 C.F.R. § 1003.6, "and no BIA decision is expected in the foreseeable future, her detention pending removal … raises the serious constitutional concerns identified in Zadvydas v. Davis, 533 U.S. 678 (2001)." (Pet. at 2.)

Ground 3: "ICE's simultaneous release of her mother under identical circumstances, without explanation, constitutes arbitrary agency action in violation of the Administrative Procedure Act ["APA"]." (Pet. at 2.)

The Petition sought either release from custody or a bond hearing. (Pet. at 2.)

Respondent answered the Petition on July 10, 2026. ("Answer" at Dkt. 11.) The Answer argues: (1) ICE had authority to detain Petitioner based on a January 2026 arrest for domestic violence; (2) "whatever procedural deficiencies may have hypothetically occurred during Petitioner's re-detention do not warrant [her]

---

[1] Petitioner also moved for a temporary restraining order or preliminary injunction. (Dkt. 2.) The District Judge denied this motion on July 10, 2026, "for failure to comply with the procedural requirements of General Order No. 26-05 (Dkt. 6 at 5-6) or to establish imminent, irreparable harm that cannot be addressed through the Petition for Writ of Habeas Corpus (Dkt. 1) and supporting memorandum (Dkt. 3)." (Dkt. 10.)

release and indeed could be cured by means well short of release"; (3) "to the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge ["IJ"] under Section 1226(a)"; and (4) "[t]o the extent a bond hearing is ordered here," the Court should order it "to be provided in seven days, where Petitioner has the burden of proof to show they are not a danger or flight risk." (Id. at 2.)

Based on a referral order from the Court, the Federal Public Defender ("FPD") appeared on Petitioner's behalf. (Dkt. 13, 14.) Petitioner filed a counseled Reply on August 14, 2026. ("Reply" at Dkt. 16.) The Reply raises a new ground for relief:

Ground 4: Petitioner's Fifth Amendment right to due process was violated when she was detained without a pre-deprivation hearing. (Reply at 3.)

Because this claim was not raised in the initial Petition, the Court ordered Respondents to file a supplemental brief responding to it. (Dkt. 19.) Respondents did so on August 25, 2026. ("Resp'ts Suppl. Br." at Dkt. 20.) They argue that the Reply "states no statutory, regulatory, or other binding authority that a non-citizen receive a 'pre-detention hearing' before they are detained." (Id. at 2.) They also argue that, under current DHS regulations, immigration judges ("IJs") lack authority to conduct these sorts of hearings. (Id. at 2-3.) They argue that "the appropriate remedy, if any, is for Petitioner to receive a bond hearing" now, after her arrest. (Id. at 4.)

## III. FACTUAL RECORD

Petitioner is a citizen and national of Guatemala who has resided in the U.S. for approximately 3 years. (Pet. at 1.) She entered the U.S. on September 3, 2023, seeking political asylum. (Pet. at 1; Pet'r Decl. / Dkt. 3 at 10.) Removal proceedings were initiated against her shortly after her arrival, on or about October 17, 2023. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 245-159-741 (Guatemala),

last accessed Aug. 27, 2026). It appears that, upon her arrival or shortly thereafter, immigration authorities detained and then released her. (See Answer at 2 (referring to Petitioner's current arrest as a "re-detention").)

On May 21, 2025, an immigration judge ("IJ") ordered her removed from the U.S. Id. On June 20, 2025, she appealed the IJ's order to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. Id. There is currently no deadline set for either Petitioner's brief or the government's brief. Id.

In January 2026, Petitioner was arrested on suspicion of domestic violence. (Pet'r Decl. / Dkt. 3 at 10.)[2] Petitioner states that she "was detained overnight following a domestic dispute," but "no criminal charges were ever filed," and "there is no open or pending criminal case against" her. (Id.) Petitioner also states she has "never been convicted of any crime." (Id.) Respondent does not dispute these assertions.[3]

On May 26, 2026, Petitioner and her mother appeared voluntarily at an immigration office in Los Angeles for a scheduled appointment. (Pet. at 1-2.) ICE detained Petitioner. (Id. at 2.) Her mother, "who was present under identical circumstances," was not detained. (Id.) "No individualized determination was articulated explaining why Petitioner presented a greater risk than her mother who was permitted to leave." (Id.)

Respondent's Answer asserts that Petitioner's detention was based on the January 2026 arrest for domestic violence. (Answer at 2.) However, the Answer does not attach any written paperwork notifying Petitioner of the reasons for her

---

[2] The record does not reflect whether the suspected domestic violence was against her mother, a romantic partner, or some other cohabitant.

[3] Although the Answer cites a Form I-213, Record of Deportable/ Inadmissible Alien as proof of the arrest, the Answer fails to attach a copy of the Form I-213. Respondent's Answer does not allege that the arrest resulted in criminal charges or a conviction.

detention, any declarations, or any other evidence to support this assertion.

Petitioner remains in ICE detention in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 245-159-741 (Guatemala), last accessed Aug. 27, 2026). She has never had a bond hearing before an IJ. (Pet. at 3.)

## IV. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 4, Her Due Process Claim.[4]

#### 1. Legal Standard.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard

---

[4] As discussed above, Ground 4 was raised in Petitioner's counseled Reply but not in her pro se Petition. Ordinarily, the Court does not allow petitioners to raise new grounds for relief in their replies. However, leave to amend must be liberally granted and would be appropriate here. See generally Fed. R. Civ. P. 15(a)(2) (providing that courts "should freely give leave [to amend] when justice so requires"); 28 U.S.C. § 2242 ("[An] [a]pplication for a writ of habeas corpus .... may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). Given that Petitioner's due process claim is fully explained in the Reply, requiring Petitioner to file a new, amended Petition reiterating the same allegations would be inefficient and result in unnecessary delay. See generally Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Respondents have not been prejudiced by this Court's consideration of Ground 4, because the Court gave them an opportunity to file supplemental briefing responding to this claim.

'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Analysis.**

a. Liberty Interest and Private Interest Affected.

Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases); Omer G.

G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).

Although neither party has provided specific facts about when or why Petitioner was released from custody while her removal case was pending, such release means DHS necessarily determined that she was not a danger to the community or flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Petitioner was required to comply with some conditions of release, since she voluntarily appeared at an ICE office on the day her current detention began. Petitioner possessed a liberty interest in remaining out of custody, and her private interest in remaining at liberty is strong.

b. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

As noted above, Petitioner's prior release indicates that ICE found she was not a flight risk or danger to the community in 2023. When ICE re-detained her in

2026, there is no evidence that ICE served Petitioner with written notice of why she was being re-detained or gave her any opportunity to dispute the reasons for her re-detention. See generally 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3) (DHS regulations requiring that a noncitizen be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification").

In the current proceedings, Respondent asserts that Petitioner's January 2026 arrest for domestic violence "constitutes changed circumstances allowing Respondent to detain her." (Answer at 2.) Yet Petitioner contends that she was never charged with or convicted of any crime following this arrest. (Pet'r Decl. / Dkt. 3 at 10.) This dispute over whether Petitioner's arrest violated the terms of her release or renders her a danger to the community underscores the need for notice and an opportunity to be heard. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives her an opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.

c. Countervailing Government Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In the undersigned's experience, the government is routinely able to comply with orders requiring that such a hearing be held within

seven days. Respondent has presented no evidence to the contrary.

In sum, all three Mathews factors weigh in favor of finding that due process required a pre-deprivation hearing prior to Petitioner being re-detained by ICE.

d. The Appropriate Remedy is Release, Not a Post-Deprivation Bond Hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); see also Morales v. U.S. Immigration & Customs Enforcement, No. 5:26-cv-01404-DOC-MAR (C.D. Cal. Apr. 15, 2026) (Dkt. 17); Changoluiza Corrales v. Marin, No. 5:26-cv 01716-KK-RAO (C.D. Cal. Apr. 15, 2026) (Dkt. 15).[5]

---

[5] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7 (C.D. Cal. Jan. 13, 2026). Based on the weight of this persuasive authority, the Court will enter both types of relief here.

Respondents argue that it is somehow improper or illegal for the Court to order this type of relief because current DHS regulations do not give IJs authority to hold these types of hearings. (Resp'ts Suppl. Br. at 2-3.) But "the Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7. The Constitution is the supreme law of the land. See U.S. Const., art. VI, § 2. If necessary, DHS may need to amend its regulations to comport with what the Constitution requires. See, e.g., Pham v. Warden, 833 F. Supp. 3d 1092, 1103 (E.D. Cal. 2026) ("Section 241.13 of Title 8 was added to the Code of Federal Regulations after the decision in Zadvydas to incorporate the constitutional limitations on detention of noncitizens after the expiration of the 90-day removal period under 8 U.S.C. § 1231(a).").

**B. The Other Claims Are Dismissed as Moot.**

Because this order grants relief on Ground 4, there is no further relief the Court can grant on Grounds 1-3. Accordingly, these claims are dismissed as moot.

//

//

---

IJ. Id. at *5.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 4 of the Petition (as raised in Petitioner's Reply) is **granted**.

2. Grounds 1-3 of the Petition are dismissed without prejudice as moot.

3. Respondents shall **immediately release** Zulmy Revolorio Ramirez (A# 245-159-741) from custody.

4. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

5. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[6]

DATED: _August 28, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[6] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).